# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DONNELL MAURICE SIMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:05CV727CEJ/MLM |
| ) | |
| CHUCK DWYER, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by Petitioner Donnell Maurice Sims ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted and a Supplemental Response. Doc. 10; Doc. 12. Appointed counsel filed a Traverse on Petitioner's behalf. Doc. 15. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

## I.
## BACKGROUND

In Cause No. 031-4074 Petitioner was charged with one count of burglary second degree and one count of stealing over $500, both felonies. In Cause No. 031-4068 Petitioner was charged with tampering first degree, a felony. In Cause No. 011-4953 Petitioner was charged with one count stealing, a felony, and one count of possession of drug paraphernalia, a misdemeanor. In Cause No. 039-4172 Petitioner was charged with one count of possession of drug paraphernalia and one count of receiving stolen property under $500, both misdemeanors. In Cause No. 039-4192 Petitioner was charged with one count of escape from custody and one count of possession of drug paraphernalia with intent to use, both misdemeanors. Petitioner was charged as a prior and persistent offender. His

prior convictions included unlawful use of a weapon in the City of St. Louis and theft under $300, subsequent offense, in St. Clair County, Illinois. Resp. Ex. F, Transcript of Plea Hearing, ("Tr.") at 7-8.

At Petitioner's plea hearing on June 8, 2004, prior to the court's accepting Petitioner's guilty pleas, the prosecutor stated what the State would prove beyond a reasonable doubt as to each of the charges faced by Petitioner. Tr. at 9-15. Petitioner acknowledged to the court that the statements made by the prosecutor regarding the proof which would be established by the State in each of the cases against him were accurate. Tr. at 11-15. Also, prior to accepting Petitioner's guilty plea to the above described charges the court explained to Petitioner that the court could sentence Petitioner up to seventy-three years for the crimes with which he was charged. Pursuant to the court's questioning Petitioner informed the court that he was satisfied with the representation he received from the attorney representing him at the plea hearing. The court further explained to Petitioner the rights he was waiving by pleading guilty. The court found Petitioner guilty of the charges to which he pled guilty and found that Petitioner was a prior and persistent offender. The court sentenced Petitioner to twelve years in the Department of Corrections ("DOC") on each felony count and one year in the Medium Security Institution of the City of St. Louis for the misdemeanor counts. All of Petitioner's sentences were to be served concurrently with one another. The Judgements against Petitioner were entered on June 9, 2004. Tr. at 35-36.

Petitioner did not file a post-conviction relief motion. On May 6, 2005, he filed a § 2254 Petition in which he raises the following issues:

**(1) The trial court failed to hold a competency hearing when it had reasonable doubt that Petitioner was competent to enter a guilty plea;**

**(2) Petitioner was denied effective assistance of counsel because trial counsel "abandoned him, failed to prepare and investigate, and coerced and threatened" Petitioner to enter a guilty plea**.

2

Doc. 2 at 4(a).

## II.
## LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails to follow applicable state procedural rules for raising the claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). See also Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997) ("[B]efore a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts." (citing Anderson v. Harless, 459 U.S. 4, 6 (1982); Kenley v. Armontrout, 937 F.2d 1298, 1301 (8th Cir.1991)). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Abdullah, 75 F.3d at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. See Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner

can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

Missouri Rule 24.035 provides the exclusive remedy for a person who is convicted pursuant to a guilty plea to seek relief on the grounds that his or her conviction violates the Constitution; this includes claims of ineffective assistance of trial counsel. Rule 24.035(b) provides that such a person has 180 days after he is delivered to the Department of Corrections to file a post-conviction relief motion. Petitioner in the matter under consideration was delivered to the Department of Corrections on June 16, 2004. As such, he had until December 13, 2004, to file a post-conviction relief motion. In Petitioner's case he did not file a post-conviction relief motion pursuant to Rule 24.035. As such, Petitioner admits, and the court finds, that he procedurally defaulted the issues which he raises in his § 2254 Petition. Petitioner does not suggest that he is actually innocent of the crimes to which he pleaded guilty. See Murray v. Carrier, 477 U.S. 478, 496 (1986) (holding that where no cause and prejudice is shown, a very narrow equitable exception exists for a petitioner who can make a showing, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent).

Petitioner contends that his mental illnesses, psychosis and schizoaffective disorder, from which he allegedly suffered for thirty years, establishes cause to excuse his procedural default. Doc. 15 at 2. The issues which Petitioner contends the court should consider pursuant to his § 2254 Petition despite his procedural default address Petitioner's competency to enter a guilty plea and whether Petitioner received effective assistance of counsel upon pleading guilty.

Addressing an argument that a habeas petitioner's mental disorder or illness should excuse procedural default of a habeas claim that a guilty plea was not entered knowingly and willfully

4

because of mental illness, the Eighth Circuit held in Holt v. Bowersox, 191 F.3d 970, 974 (8th Cir. 1999) (emphasis added), as follows:

> Our cases establish that, in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a *conclusive showing* that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief. See Garrett v. Groose, 99 F.3d 283, 285 (8th Cir.1996); Nachtigall v. Class, 48 F.3d 1076, 1080-81 (8th Cir.1995); Stanley v. Lockhart, 941 F.2d at 708-10. *Mental illness prejudices a petitioner if it interferes with or impedes his or her ability to comply with state procedural requirements, such as pursuing post-conviction relief within a specific time period*. See Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir.[1998]), cert. denied, 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 317 (1998). Furthermore, we have held that a defendant is not competent to waive post-conviction remedies if he or she is "suffering from a mental disease, disorder, or defect that may substantially affect his [or her] capacity to appreciate his [or her] position and make a rational choice with respect to continuing or abandoning further litigation." Anderson v. White, 32 F.3d 320, 321 (8th Cir.1994).

Additionally, the Eighth Circuit has held:

> A section 2254 applicant's failure to raise a claim in state post-conviction proceedings results in procedural default of that claim. See Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir.1997). We have recognized competency issues are subject to procedural bar. Weekley v. Jones, 56 F.3d 889, 894-95 (8th Cir.1995), aff'd in part, 76 F.3d 1459, 1461 (8th Cir.1996) (en banc). As the State points out, regardless of how incompetent [the petitioner] now contends he was, [the petitioner] was represented during the state court proceedings, and [his] incompetence did not prevent his counsel from raising the competency issue. As noted above, [the petitioner's] defense counsel expressly recognized their obligation to monitor closely [the petitioner's] mental fitness to proceed with the trial. ... Thus, [the petitioner] procedurally defaulted on this trial competency claim.

Lyons v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005). See also Nachtigall v. Class, 48 F.3d 1076, 1081 (8th Cir.1995) ("A *conclusive showing* of incompetence is required before mental illness can constitute cause.") (emphasis added) (citing Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir.1991)).

In the "context of procedural bars arising from failure to pursue state postconviction remedies, '[a] defendant is competent ... if he is not suffering from a mental disease, disorder, or defect that may substantially affect his capacity to appreciate his position and make a rational choice with respect to

5

continuing or abandoning further litigation.'" Id. (quoting Anderson v. White, 32 F.3d 320, 321 (8th Cir.1994) (other citations omitted). "*Mental illness and legal incompetence are not identical, nor are all mentally ill people legally incompetent.*" Id. (emphasis added).

Petitioner acknowledges in his Petition[1] that the court addressed the issue of his competency to plead guilty; that he discussed with his lawyer the possibility of being examined for competency; that the lawyer advised him against pleading not guilty due to incompetency; and that after discussing the matter with counsel he chose to plead guilty. Doc. 2 at 7-8. Petitioner further states that his attorney advised him that if he pled guilty he would be released in five to eight years and that if he were found incompetent by a psychiatrist he would be put in a State mental hospital for twenty years. Doc. 2 at 8. Additionally, in his § 2254 Petition Petitioner acknowledges that while in custody prior to his entering a guilty plea he was treated and was on medication for his mental illness; that subsequent to his pleading and being found guilty and while in prison he was placed on medication; that he was placed on medication "shortly after" June 17, 2004; that he was denied medication for two weeks sometime after September 29, 2004; that he was given medication on October 15, 2004; and that his medication expired on December 27, 2004. Doc. 2 at 8-9.

Petitioner further acknowledges that on June 25, 2004, while in the custody of the DOC, he was seen by a staff psychiatrist who concluded that Petitioner had Mood Disorder with Psychotic features. Petitioner further states that the medications he was taking while in the custody of the DOC can have side effects. Petitioner argues that at the time he should have been preparing his post-conviction relief motion he was suffering a severe mental disorder and receiving medications which interfered with and impeded or prevented him from filing a post-conviction relief motion and

---

[1] Appointed counsel has not amended Petitioner's § 2254 Petition. As such, the Petition stands as filed.

prevented him from making rational decisions concerning his case. Petitioner further argues that he was denied his medication from September 24, 2004, until October 15, 2004, and that during the 180 days he had to file a timely State post-conviction relief motion there was "very little consistency in providing [him] his proper medication." Doc. 15 at 3-4.

Petitioner's medical records reflect that he was prescribed medication including Haldol, Cogentin, and Trazadone on June 22, 2004; that he took Cogentin on June 22, 2004, from June 24 through August 22, 2004, from September 4 through September 17, 2004, from September 19 through October 3, 2004, and from November 1 through December 29, 2004; that he took Haldol on June 22, 2004, from June 24 through June 30, 2004, from July 2 through August 22, 2004, from September 1 through October 3, 2004, and from November 1 through December 29, 2004; that on June 25, 2004, he was prescribed Elavil; and that he took Elavil from June 25 through August 22, 2004, from September 4 through October 3, 2004, and from November 1through December 29, 2004. Doc. 15, Ex. 2A-D. Petitioner, therefore, was on medication for a substantial number of days during the 180 day period during which he could have filed a post-conviction relief motion pursuant to Rule 24.035.

Additionally, records before the court reflect that on December 1, 2003, while he was in custody, Petitioner was referred for a suicide consultation; that he was taking medication on this date; and that it was determined that he would not be maintained on suicide watch. Doc. 15, Ex. 4. Records further reflect that on December 5, 2003, it was determined that Petitioner continue on "full" observation status wherein he would be observed at intervals not to exceed ten minutes and that Petitioner was assigned to a suicide watch cell; that on December 9, 2003, Petitioner was released from "modified/close" observation status and that Petitioner was oriented and reported no suicidal ideations; that on January 22, 2004, Petitioner was taking medication and it was determined that he

7

should be closely observed; and that on January 23, 2004, it was determined that Petitioner continue on "modified/close" observation status. Doc. 15, Ex. 4.

The transcript of Petitioner's plea hearing indicates that prior to accepting Petitioner's guilty plea the court asked Petitioner whether he was taking any prescribed medication; that Petitioner responded that he was taking Haldol, Cogentin, and Trazodone; and that, upon being questioned by the court, Petitioner stated that he was on the medication for schizophrenia. Pursuant to further questioning by the court Petitioner stated that he understood the proceedings against him and that he discussed his mental health history with his lawyer "a little bit." Petitioner's attorney informed the court that the lawyers who previously had handled Petitioner's case had discussed and documented Petitioner's mental health history; that in the opinion of Petitioner's plea counsel Petitioner was competent to stand trial; that Petitioner responded appropriately to questions; and that he asked the appropriate questions in connection with his case. Tr. at 5-7.

While being questioned by the court at his plea hearing concerning the assistance he received from counsel Petitioner stated that he told his first attorney that he wanted a psychiatric examination and that he did not tell his guilty plea counsel that he wanted a psychiatric examination. When asked by the court if wanted to pursue a psychiatric examination Petitioner responded that he did not want to do so and that he "let it go" after his first attorney would not pursue such a course. When asked by the court if he wanted to withdraw his guilty plea and have the court order a psychiatric examination Petitioner responded that he did not. Tr. at 41-43. Indeed, despite Petitioner's claim that he was incompetent at the time he plead guilty, Petitioner was *represented by counsel* during the State court plea proceedings, according to Petitioner's admission *he and counsel discussed the competency issue*, and *the court addressed Petitioner's mental fitness* with counsel and with

8

Petitioner. See Lyons, 403 F.3d at 592-93. According to the Eighth Circuit's holding in Lyons, under such circumstances a habeas Petitioner's procedural default is not excused.

The record does establish that Petitioner suffers from a mental disease, but as set forth above, the mere existence of a mental disease does not establish the legal incompetence requisite to excuse Petitioner's procedural default. See Nachtigall, 48 F.3d at 1081. Petitioner acknowledges that he was medicated for a substantial number of days during the period in which he could have filed a post-conviction relief motion. Petitioner has not shown that while he was medicated he was suffering from side effects of medication which prevented him from filing a post-conviction relief motion. Moreover, Petitioner does not suggest that he belatedly attempted to file a State post-conviction relief motion or that he asserted before any State court that he was unable to file a timely post-conviction relief motion for the reasons he now asserts before this court. In any case, Petitioner has not shown that his mental illness interfered with or impeded his ability to comply with State procedural requirements and to pursue his State post-conviction relief remedy. See Holt, 191 F.3d at 974. As such, Petitioner has not made a *conclusive* showing that his mental illness interfered with his ability to appreciate his position and make rational decisions regarding his case at the time during which he should have pursued State post-conviction relief. See id.; Nachtigall, 48 F.3d at 1081. The court will, however, alternatively address the issues which Petitioner raises in his § 2254 Petition on their merits.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The

Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Where a federal constitutional question is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)). As Petitioner did not present the issues which he raises in his § 2254 Petition to the State court and because the State courts did not consider Petitioner's claims on their

10

merits, this court will apply a pre-AEDPA standard to its consideration of the merits of Petitioner's claims. See Robinson, 278 F.3d at 865.

## IV.
## DISCUSSION

**Ground 1 - The trial court failed to hold a competency hearing when it had reasonable doubt that Petitioner was competent to enter a guilty plea:**

In regard to the issue raised in Petitioner's Ground 1 that the court should have, sua sponte, conducted a competency hearing, the United States Supreme Court held in Santobello v. New York, 404 U.S. 257, 261-62 (1971), that:

> [T]he sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. (citations omitted).

According to the Supreme Court, a record must disclose that a criminal defendant voluntarily and understandingly entered his plea of guilty. Boykin v. Alabama, 395 U.S. 238, 244 (1969). For a waiver of constitutional rights given pursuant to a guilty plea to be valid under the due process clause, the "'state court [must] make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin.' (citation omitted). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process." Id. at 243 n.5. "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant *possesses an understanding of the law in relation to the facts*." Id. (citation omitted) (emphasis added). However, "the failure of the state court to make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin does not automatically vacate the plea." Griffith v. Wyrick, 527 F.2d 109, 112 (8th Cir. 1975). As stated by the Eighth Circuit, "[t]he state may still show, by way of

11

post-conviction proceedings, that the plea was voluntarily made." Id. The Eighth Circuit has further explained:

> "It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." Medina v. California, 505 U.S. 437, 439, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). To be competent to stand trial, a defendant must have "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." Id. at 181, 95 S.Ct. 896. Still, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial .... Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Vogt v. United States, 88 F.3d 587, 591 (8th Cir.1996) (citation omitted). The trial court must monitor a defendant's competence during trial and "should consider (1) evidence of irrational behavior by the accused, (2) the accused's demeanor at trial, and (3) any prior medical opinion as to the mental competency of the accused to stand trial." Reynolds v. Norris, 86 F.3d 796, 800 (8th Cir.1996). "Additionally, the trial court may consider an express doubt by the accused's attorney, although such doubt alone is not enough to establish sufficient doubt." Id.

Lyons, 403 F.3d at 592-93.

In Petitioner's case, as set forth above, upon accepting Petitioner's guilty plea the court made a record affirmatively showing the voluntariness of Petitioner's guilty plea including the fact that he understood the law in relation to the facts of the charges against him. Additionally, the court informed Petitioner of the constitutional rights he was relinquishing by pleading guilty. Under such circumstances Petitioner was not denied his constitutional rights for the reason asserted in Ground 1. See id.; Holt, 191 F.3d at 974. Therefore, pursuant to a pre-AEDPA standard the court finds that Petitioner is not entitled to habeas relief based on Ground 1. See Robinson, 278 F.3d at 865.

**Ground 2 - Petitioner was denied effective assistance of counsel because trial counsel "abandoned him, failed to prepare and investigate, and coerced and threatened" Petitioner to enter a guilty plea:**

In support of Ground 2 Petitioner argues that his counsel coerced him to plead guilty because she told Petitioner that he would spend twenty years in the State hospital if he did not do so and that counsel's only advice to Petitioner was to plead guilty. Petitioner further argues that if his counsel had investigated it would have been discovered that Petitioner suffers from paranoid schizophrenia and that this illness prevented Petitioner from appreciating the wrongfulness of his conduct. Petitioner further argues that, in effect, he receive no actual assistance of counsel. Doc. 2 at 14-15.

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

13

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in Strickland that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citing Stickland, 466 U.S. at 694). The Court held in Mickens that:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case- by-case inquiry is unnecessary. See Cronic, supra, at 658-659, 104 S.Ct. 2039; see also Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only

> in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. Cronic, supra, at 659, n. 26, 104 S.Ct. 2039.

Id.

Although Petitioner contends that he actually received "no" assistance of counsel, the court finds that the transcript of his plea hearing establishes that he was represented by counsel. As such, the exception to the prejudice requirement of Strickland as described in Mickens is not applicable in Petitioner's case.

As stated above, the Supreme Court held in Strickland that to establish that counsel's performance was constitutionally ineffective, a petitioner must establish both that the attorney's performance was deficient and that this deficiency prejudiced the petitioner's defense. See Strickland, 466 U.S. at 687. The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d 720, 723 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

First, in regard to Petitioner's claim that his counsel failed to investigate his mental status the transcript of Petitioner's plea hearing reflects that counsel was aware of Petitioner's mental disease. Additionally, Petitioner acknowledges that counsel told him that if he were found not guilty by reason of his mental disease Petitioner would spend considerably more time in a State mental institution than

he would spend in prison if he pled guilty. Moreover, as stated above, Petitioner does not allege that he is innocent of the crimes to which he pled guilty. Further, Petitioner has not established even if his attorney had requested that he have a competency hearing that the court would have found Petitioner incompetent due to his mental disease. As set forth above, when given the opportunity by the State court to withdraw his guilty plea Petitioner chose not to do so. As such, the court finds that Petitioner has not established that his counsel's performance was unreasonable or that he was prejudiced as a result of his counsel's alleged ineffective assistance. See Strickland, 466 U.S. at 687. The court finds, therefore, pursuant to a pre-AEDPA standard that Petitioner's allegations in Ground 2 that he received ineffective assistance is without merit. See Robinson, 278 F.3d at 865.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted the issues which he raises in his § 2254 Petition. The court further finds, alternatively, that the issues raised by Petitioner in his § 2254 Petition are without merit. As such, the court finds that Petitioner should be denied the relief which he seeks in his § 2254 Petition and that Petitioner's § 2254 petition for habeas relief should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** the relief sought by Petitioner be **DENIED** and that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; [2]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

        /s/Mary Ann L. Medler
        MARY ANN L. MEDLER
        UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of November, 2005.